15-2423 and 15-2451 David M. Rees, et al. v. Bd of Trustees of the Iron Workers Local No. 25 Pension Fund, et al. Arguments not to exceed 15 minutes per side, and Mr. Letterman for the appellant's cross-appellation. Good morning, may it please the Court. Ron Letterman on behalf of the defendant's appellants. The primary issue raised in this appeal is whether or not, as a matter of law, the facts of this action were sufficient to justify the application of the doctrine of equitable estoppel in order to circumvent the clear and unambiguous provisions of the retirement fund at issue. I would like to acknowledge that the trial court was not very sympathetic to our arguments. However, our arguments are based upon very, very stringent standards, which the Sixth Circuit has enacted in order to permit the application of estoppel in an ERISA action of this nature, and it is our position that the facts simply do not give rise to an allowable application of the doctrine of estoppel. The threshold issue, I believe, and this is strictly complying with the standards that were set forth by the Sixth Circuit in both the Blumke and the Paul cases, the first issue is whether or not the plan provisions were indeed unambiguous, and whether or not in that context those plan provisions allowed for the use of quote-unquote banked hours, which really is more of a generic term than a term of art, to permit a proposed retiree to have a full 30 years of service in order to qualify for early retirement. You're not alleging that that requirement that the person had to work 870 days past the 30th year, that wasn't the ambiguous part, was it? Past the 30th year? No, he would have had to have worked 870 hours during the 30th year, but not past that. Okay, during the 30th year, okay. Yes. So what is it that you contend is the unambiguous provision that prohibits use of banked hours? The provisions would be section 3.2, subparagraph E, which defines year of service as a planned year during which a participant has at least 870 hours of service. It doesn't say that that cannot use banked hours, though, does it? Well, by itself, I would emphasize the words during which, and the fact that it modifies the fact that the planned participant has to have 870 hours of hours worked during that year. So is the problem the year in which the banked hours occurred? Is that what the problem is? Yes. As opposed to that there were banked hours? I'm sorry, Eula. I'm asking you what his problem is under your interpretation. Yes, the problem is that he did not have 870 hours during planned year 2012, which began May 1st. And 870 hours of what? Of, as described by the contract, it would be an hour of service. So why can't service include banked hours? Then, because you would then go to section 3.6, small e, of the 2010 amended agreement, which was quoted on page 21 of our appellant's brief. As I was reading the brief last night, I noticed that I didn't provide the actual section citation. I provided the pagination of the administrative record, but I omitted, and I apologize for the omission, of the citation to section 3.6, small e. You're saying 3.6, small e. The version that I have doesn't have subsections. It's just 3.6. Am I reading an earlier or later version? You might be. And there's an amended version also of 2010. There is an original version and an amended version. And the applicable sentence, again, it's quoted on page 21 of our appellant's brief, is that it says that the applicant's 30th year would not be complete unless he works 870 or more hours after May 1st of his 30th year. Does the amended provision affect this particular section in the language that you're quoting to us? It's applicable, yes. I said, okay, does it amend it at all? Does it amend it? Yeah, because we're looking at one version, and you're saying there was an amended one later on. And I want to know if whatever amendment you're talking about, or whatever revision, pardon me, you're talking about, in any way alters this language or affects it. The sentence that you just read, we have marked down as paragraph 5. You say E. E happens to be the fifth paragraph. The language that you just read is identical to paragraph 5. Okay. Are there any other changes? No, not that. Thank you. No, no pertinent changes. No relevant changes, at least. No. And that would supplement section 3.2E and also article 1.1 defining hours of service and clarifying that, in particular, for year 30, you need 870 hours worked in that year. It's our position that 3.2E, a little bit of history, this language was enacted in 2004 for the specific purpose of eliminating the use of an hour of time which was worked in one year but not paid for until a separate year. So that's the threshold point is that, number one, the provision is unambiguous. Second point is... So if I could clarify. So his problem was, in your view, that these banked hours were in a previous year, not after May 1st. They were before May 1st. Correct. But he could have used banked hours if they had occurred after May 1st, under your theory? Then they wouldn't be banked hours. They'd be actual hours worked in that planned year. In that year. So banking, by itself, involves work ahead of the particular year in question. Yes. So it would have been work done in overtime, for example, overtime work that was actually at the conclusion of 2011. Isn't a banked hour usually one where you worked it but you didn't get paid until a later time? Yes. So your whole argument, it's not that complicated, is you've got to actually work it after May 1st. Whether you got paid for it after May 1st doesn't really matter as long as you worked it. So we don't have to worry about whether it's banked or not banked. Your argument is he didn't work it after May 1st. He worked it earlier. Correct. I don't understand why we don't avoid all of this by virtue of looking at the breach of a fiduciary duty. I don't understand how the person that made these representations to Mr. Rees is not a fiduciary and didn't make a misrepresentation. And I don't understand how anybody could say that Rees didn't rely upon it. So isn't that a much easier way to look at this case? Well, that was an approach that the trial court avoided. It's not an approach... I know you avoided it. ...that that would... ...this whole morass of trying to figure out whether we extend equitable estoppel in all of this. How do you avoid the application of a breach of fiduciary duty? It's simple. That one trustee does not have the authority to interpret and bind a planned administrator and the entire board of trustees to an interpretation that is contrary to its unambiguous terms. Is he a fiduciary? Is he a fiduciary? I think that he is stepping outside the lines of his fiduciary obligations if he's giving advice regarding the terms of a planned provision. So you're saying that the elements of a breach of fiduciary duty implicitly or explicitly say the fiduciary has to be acting within the scope of the fiduciary's duties at the time? Yes. You have authority for that? It sounds logical, but you've got a case that says that? Off the top of my head, I do not. And where do we look in the plan to see that this trustee can't give advice? Well, I'm not so sure that the plan says that a trustee cannot give advice, but... Then why isn't he acting within the scope of his duties as a trustee? What does a trustee do? A trustee acts for the best interests of the fund. And yes, indirectly the beneficiaries are benefited by the fund, but a singular trustee cannot give out a binding interpretation of a plan. So you can appoint somebody a trustee and the trustee can induce somebody to do something that really screws them and then you can say, oh, never mind. Well, that goes to whether or not the so-called inducement was reasonable. And I think that that needs exploration beyond what was contained in the trial. What was unreasonable about this fiduciary's representation, which seemed pretty clear on its face? Are you asking what was unreasonable about it? That's the question. What's unreasonable is that the interpretation was contrary to the unambiguous plan provisions. And the beneficiary should have known that? He should have gone either to the plan administrator or spoke to an attorney or requested an interpretation from the board of trustees as a whole. One trustee cannot bind the entire fund or the entire board to an interpretation that's against the unambiguous provisions. It seems to me that the beneficiary didn't go out seeking this particular favorable benefit. The beneficiary had the intent to, you know, to work longer. And the fiduciary seemed to have induced this particular action. And I have a problem with this. I understand. And the plaintiff is very, very sympathetic with respect to that consideration. I do not dispute that. But nonetheless. What capacity was he acting in when he made the representation that you could use banked hours and so you could retire August 1st instead of October 1st? What capacity was he acting in when he said those things? I don't think that he was acting to bind the fund. I didn't ask about binding. What is the capacity? Was he just a guy on the street? Was he a buddy? Or was he acting as a trustee? Honestly, I think that the affidavit from the plaintiff is unclear in that regard. And the record is incomplete in that regard. And one of the reasons why the record understood. Tell me what capacity you say he was acting in. Because either it's a fiduciary capacity or it's not a fiduciary capacity. Yes. I do not believe he was acting in a fiduciary capacity. During that conversation, if he is trying to give it a voice. And how would the guy know that this trustee, he represents himself to be a trustee, which apparently he was. How would the participant, who apparently decided to rely on this guy, how would he know that he wasn't acting in a fiduciary capacity when he made those representations? Because he would know that a single trustee cannot bind a fund to an interpretation. This guy that puts up iron someplace, this iron worker would know that? How would he know that? It's standard of practice. It's standard of practice. But even more significantly, he's bound. Where do I find the standard of practice? With all due respect, I think you're just making stuff up. I'm not. But unfortunately, we didn't have an affidavit from the trustee. And I know that that presents a problem. I admit to that. That presents a problem. But the plaintiff's affidavit. The fact that nobody asked O'Connell these questions is, it seems to me, the deficiency that that presents is one on your side, not on the plaintiff's side. You're offering up O'Connell to say, well, no, I really didn't say that, or no, I didn't mean that, or no, I didn't know what I was doing, or whatever. But you don't have any support for that. So how do you meet your burden of proof on that? Well, it's the plaintiff's burden of proof, not ours, but the plaintiff's. The plaintiff has said he's a trustee. It seems to me that's all you've got to do. You have to now show that he wasn't acting in a fiduciary capacity. The plaintiff cannot rely upon a conclusory allegation that the man was acting as a trustee. Yes, he may have appeared to have had knowledge of what he thought was the interpretation of the plan. But as trustee, he's acting in the best interest of the trust. He's not supposed to be advocating for the beneficiaries, particularly when that position would be contrary to the uncontradicted, unambiguous plan language. That's our position. Thank you. Your red light is on. So your time is up. Oh, I didn't even see that. I'm sorry. No problem. Good morning, Your Honors. Diane Subly on behalf of Appellees and Cross Appellants. We have tried to suggest that if the court does not wish to affirm an equitable estoppel, that we fully briefed with affidavits showing that the trustee interjected himself as trustee and business manager and caused Mr. Reese to change his plans. Let's talk about that for just a second, about how O'Donnell got involved. My understanding is Reese said, your guy says he wants to retire, and then he gets contacted by O'Donnell to set up a meeting. Is that right? Close. Reese says to his employer, Mr. Buckle, he wants to retire effective October 1. Mr. Buckle contacts the trustee, Mr. O'Donnell, and the trustee calls for the meeting. And at the meeting, with the support of the affidavits… And O'Donnell says, well, let's have a meeting to talk about it? No. Buckle calls just to say, my guy plans to retire October 1, which is what the affidavits say. And the trustee says, let's call a meeting. I want to talk about this. At the meeting, what the trustee says is twofold. It's important for these purposes. One, that past practice has been hours paid, paid in a plan year, and for which contributions, insurance, and taxes are paid in that plan year will count in that plan year for credited service. The section that the court questioned, which has the sentence on the 870 hours have to be under May 1st, that's kind of a red herring because that belongs in the section on applicable additional credited service of .3 for each year. That can't be used in the 30th year under that circumstance. We're not trying to claim under that circumstance. The section 3.2aE doesn't contain that sentence. All it says is that the employee has those hours and not even has worked. You're saying that 3.6, additional credited service, with that critical sentence in it, his 30th year would not be complete until he works 870 hours or more, doesn't apply to the section that we're dealing with, 3.2 years of service. 3.2, yes, because where it is applicable is with the additional .3. When you look at the sheets that go kind of sideways and you see a 1.0 and then a 1.3, that's the .3 that they're talking about. Our guy was not asking for those .3 years to be added up in his 30th year. What he was saying was that when you look at the plan, which doesn't say has worked, it just says employee has, when you look at the definition under 1.19, which includes in the alternative, as Judge McKeague, you pointed out earlier, hours for which there was entitlement for payment, and then the two regulations that I've pointed out, the one expressly listed in that definition and the one incorporated, would allow him to have hours paid in a plan year just like the trustee said, count so long as the contributions were made in that plan year. So the trustee is not saying anything that is inconsistent with the definition of hour of service when you really look at the federal regulations. In addition... to this additional credit provision as opposed to banked versus not banked. Because that is where the language appears. If it were to apply generally, it should have appeared elsewhere or it should have been repeated. And let me add one other thing. You also have the joint appendix, which was submitted under seal. The judge didn't reach what should be in the administrative record, but we did submit a second disc and hard copy, which included the collective bargaining agreement that the defendants didn't want to be put in. Finally, in request to admit, I asked and they admitted that was an authentic copy. In that collective bargaining agreement, if I could... I'm sorry, that volume two is unpaginated, but you will find the collective bargaining agreement there. In article 13 of the collective bargaining agreement, which is the master agreement, that's the wages and fringe benefits provision and it says that contributions are made on gross wages, hours paid for purposes of the pension fund, the vacation fund, and the health and welfare fund. That's note one and note three in article 13. When it's for impact or drug and safety and training, it's on hours worked. They know when to use hours worked and hours paid. Where it is incorporated into the plan is in the hours of service. Oh, do you mean the language? Is the collective bargaining agreement incorporated into the plan? Yes. Where? I will need the plan document to tell you, Your Honor. It's in the trust agreement that they are to follow the contributions schedule in the collective bargaining agreement. That's the way the master fund works, and I will supply that to you. But the collective... You're getting way ahead of things here. I'm sorry. All I'm asking you, is it incorporated in the plan? Because we decide things based on the administrative record that was generated in connection with this ERISA case. So I'm just trying to figure out, is the collective bargaining agreement part of that or isn't it part of that? Yes, but I'd have to look up the provision. May I provide it to you after? That says that the collective bargaining agreement... I'm not asking you to do that. I don't care what you do. That would be nice. Thank you. I'm just trying to find out how we look at the collective bargaining agreement. Okay. This is a multi-employer plan pursuant to a trust agreement. The employers are not the plan sponsors. They make contributions pursuant to the collective bargaining agreement, which is the other federal law that he is entitled to have followed under the hour of service definition. So that's one way that it is incorporated into the agreement. That's the way a multi-employer plan works. The contributions are made on hours paid in this particular circumstance. We do this all the time. So we understand that these multi-employer plans arise out of these various collective bargaining agreements, so you don't have a plan for each one of those collective bargaining agreements. That's a different question then, whether the language in a collective bargaining agreement either modifies or informs what the language is in the plan. Because one collective bargaining agreement might say one thing and a different collective bargaining agreement might say something else, so then how does that apply to the plan? That's all I'm concerned with. This is a master agreement, and it does apply to the plan, Your Honor, and it is something that the trustee uses in order to determine what an hour of service is. So all I'm suggesting is I'll provide an express citation for you. One question that I have, if I can turn our attention to something else. Thank you. The earlier questioning of your opponent on the breach of fiduciary duty issue, if, and my understanding is the district judge did not decide whether there was or was not a breach of fiduciary duty, and that's an alternative claim on your part. Yes. If there were a breach of fiduciary duty, would the remedy for that be the same as the remedy that the district judge gave you? There are additional remedies that I've suggested, and that's what brings this within the healthy blue cross, because the breach of fiduciary duty is not just the inducement to give up two months more so there wouldn't be any question and we wouldn't be here. The breach of fiduciary duty is not to do that within the term provided in the plan, the 90 days, so it's a breach of 404A. The breach of fiduciary duty is to enforce a defective amendment with defective notice, and therefore you're enforcing it across the plan, and we asked in the relief for that, that that breach of fiduciary duty also be plan-wide relief. So there is relief that is additional that stems from it. Let me make it clear that I was asking you about, I was asking him about the breach of fiduciary duty with respect to the representations. It didn't have anything to do with the notice or other stuff being sent out, just what O'Connell said. So now maybe Judge Moore is expanding beyond that, but it's really hard to follow you. I'm just curious, because there are different claims that you made, and the district judge focused on one, and if we were to feel that there was something to some of your other claims, would the proper approach for us be to remand so that the district court could figure out what is the appropriate remedy, or is that something that has been fully briefed for us that we could decide? And before you answer that with Judge Moore's permission, let me ask you to put a pin in that and just add one question. Maybe you could respond to both of them at the same time. Because she also asked us to expand the summary judgment order against all of the defendants, not just the pension fund, and I want to know what would be the practical benefit for your client of us doing that if we were inclined to do so. So if you could take both of those questions. Okay. Let me try. The link between the two is that he is in pay status when the amendment is promulgated, and the notice goes out. So removing his eligibility, which is based upon what the trustee told him and the written representations from the fund office and the failure to correct that within the 90 days so that he might have had a chance within the plan year, even if it were in September and October, to earn the additional hours, that's the link for purposes of the fiduciary breach between the representations, what happens as a result of them. And it's not just the oral representations of the trustee. If we find there's a breach of fiduciary duty and we say he was entitled to rely upon what the trustee told him, he gets his benefits because he would have then had the hours before the amendment was made to the plan. So it seems we don't get to any of this other stuff. So I'm just trying to figure out why we're making this so complicated then about the notice and you want it to apply to everybody else and you want everybody else in the world to be liable. I don't get that. I want it clear, yes, that he is in the plan effective August 1 so that no subsequent amendment applies to him. I understand that you could come out with a very narrow ruling that is only specific to him. But I also believe... Do you represent anybody else? At this point, no. So why are we talking about anybody else? Except for Mrs. Reese because Mrs. Reese's benefit also depends upon what he has as of August 1. Right now, because of the amendment and because he couldn't go back to work within the plan year, they have both got a diminished benefit. And as the court pointed out, she may not have a benefit if he doesn't make it to early retirement age. And you have a supplemental affidavit. So you're entitled to speak on her behalf. You just want them to be put back to where they would have been had O'Connell advised them correctly. And that would apply to him and her, right? Had O'Connell and the plan administrator advised them correctly. So the fiduciary conduct is not just the trustees and not just whether he was acting, he alone was acting as a fiduciary at the time. I'm sorry, Judge Moore, I have now forgotten your question. Well, the basic question I had is you have these various claims. And I wondered whether your remedy differed depending on which claim you potentially won on. Or is the remedy for all of these claims that your client would get the full pension that he would have gotten had he done what he had planned to do, which was to work the full 870 hours while he could and while the old retirement scheme was in effect, thereby giving him the higher pension. Is that the end result that you want from any one of these claims? Well, it is the end result we want from claims except in addition to the defective notice claim. And the problem I am having is that the fiduciary breach claim is pled with several different fiduciary breaches. So the answer to your question is, yes, if you narrowly decide you will only reach one of the fiduciary breaches, then the remedy will give the two plaintiffs, as long as the amendment can ever apply to them, the remedy, one of the remedies that they seek. So then, for instance, you are arguing in the cross appeal that the district judge was wrong to say that all the other claims were moot because, in fact, they are not moot because, as you point out, this notice claim is a separate matter and would actually provide separate remedies. Yes. And it's also pled. How does the notice provide additional remedies beyond what we just talked about you would get if you won on the fiduciary, the basic fiduciary? It is plan-wide relief, and we have asked for it. And an individual can ask. Plan-wide relief, meaning it would be relief available to other people. Yes. How do you have standing for that? An individual participant can ask for plan-wide relief. It happens all the time without a class action. And, again, since that's a question that's come up at oral argument, would you mind if I submit additional case law to back up what I'm saying? I'm happy to do so. You can do that, and your opponent can file a response. Thank you. Letter. Yes. I understand it's by letter. It should not exceed five pages. Yes, ma'am. And how many days? Two weeks. Okay. With my plaintiff, it'll be quicker. Your red light is on. I'm sorry. So if any judge has a question, I'm happy to answer. Did I answer your question? I'm sorry, Your Honor. You had one. No, I just ask you, and I suppose your answer to Judge McKee was responsive because you wanted us to expand the order against all of the defendants and not just the fund. You asked me the practical relief. The practical relief is this. The other defendants control whether there is payment out of the fund, and they have not complied with the order. That's why we would need it for even equitable estoppel and all defendants for fiduciary breaches. Why do you get that from us? Why don't you just go back to the district judge? He issued an order, and you're not getting paid. I'm sorry. I'm not getting paid? You mean the plaintiff is not getting paid? Yes. Why didn't I just go back to the district judge and file a motion for contempt because we had settlement discussions? It sounds like this is an enforcement question, not a question of whether on appeal we take this up. I just don't understand why you can't. If you're right, I don't understand why you can't get this relief that you and Judge John have been talking about from the district judge. As a motion for contempt, yes, I could. I had tried to get him to expand to all the defendants in a motion for reconsideration, and he would not do so. He relied on Cataldo. I briefed why that did not limit me to the defendant plan. I think going back again at this point without further direction would not give me anything. Thank you very much. Thank you. Did you save some time for rebuttal? I didn't write it down. I'm sorry. It's okay. How much did you save? Two minutes. Thank you. I guess following this presentation I'm a little bit confused. My understanding is that the remedy that the plaintiff was seeking was the restoration of her full retirement benefits. If hypothetically you were to rule that there was a breach of fiduciary duty and that she's entitled to those benefits, that takes care of this lawsuit. I happen to disagree with your fiduciary analysis, but I won't get into that again. I do want to ask, do I have an opportunity to respond to the supplemental brief or presentation that you're permitting? I said you did. And that's two weeks? Two weeks. Okay. Definitely. Okay. You had also requested the appropriateness of anything beyond awarding full retirement benefits, whether that should just go back on remand and allow the district judge to assert it for the first time. There's very serious anti-cutback allegations involved here. We do think that it is appropriate that the district court make a full record of those issues if it's not mooted out. And then we think that a subsequent appeal to the Sixth Circuit, based upon a more complete record, would be appropriate. The thing that I'm sort of having trouble with is, why do we say the other claims are moot? They would be moot only if the relief were identical, right? Yes. You're saying the relief is identical and, therefore, there's no need for the plaintiff to win on other grounds, because winning on one ground takes care of everything. That's what I say. Okay. Can I ask one other question? Sure. Did this case get mediated? You mean in the Sixth Circuit's mediation program? Extensively. Extensively. In light of this discussion this morning, is there any point in trying that again? We're open. I don't want to undermine the secrecy or the confidentiality components of the mediation process. I'm not asking that. Yes, we're open. We're open. We are open. Well, we appreciate both of your arguments, and the case will be submitted. Can we just find out if she's open? Yes. Your Honor, we continue with mediation right up to the last three. Simple question. I don't want the details. Are you open to trying it, to continuing in light of this argument? In light of the argument? And the question, I mean. I don't see us getting any further than we did. Okay. Thank you. We thank you both. The case will be submitted, and will the clerk call the next case.